FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

99 JUL 14 AM 10: 13

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| A. ELAINE GREEN,<br>    Plaintiff;<br><br>-vs.-<br><br>CITY OF BIRMINGHAM, ET AL.,<br><br>    Defendants. | )<br>)<br>)<br>)  No. CV-99-P-0988-S<br>)<br>)<br>) |

ENTERED

OPINION

JUL 1 4 1999

    Before the court are a number of motions filed by the defendants and taken under submission after the June 4, 1999 motion docket, including: (1) the May 13, 1999 Motion to Dismiss/ Alternative Motion For More Definite Statement of Defendant Robert Walker; (2) the May 13, 1999 Motion to Dismiss/ Alternative Motion For More Definite Statement of Defendant Mike Coppage; (3) the May 19, 1999 Motion to Dismiss of Defendant Mike Ashworth; (4) the June 4, 1999 Motion to Dismiss of Defendant Mayor Richard Arrington, Jr.; (5) the May 25, 1999 Motion to Dismiss of Defendant Pat Curry; and (6) the May 13, 1999 Motion to Dismiss of Defendant City of Birmingham.

    For the reasons expressed below, the motions to dismiss of defendants Walker, Coppage, Ashworth and Arrington are due to be granted in full. The motions of defendants Curry and the City of Birmingham are due to be granted, with leave given to the plaintiff to refile her complaint within sixty days.

1

23

Facts[1]

The plaintiff, A. Elaine Green, is an African-American female who is currently employed as a crime prevention officer by the City of Birmingham Police Department. Green has worked at the West Precinct in Ensley, Alabama, since 1976. As a crime prevention officer, she talks with local residents door-to-door and organizes meetings. She also works with Enterprise Community, an organization that reaches out to local business members for help with crime prevention.

In May 1998, defendant Pat Curry was promoted to Captain and transferred to the West Precinct in Ensley. The plaintiff's claims in this case arise out of alleged harassment by Curry at the Ensley precinct.

The plaintiff alleges that she has had difficulty in communicating with Curry regarding the crime problems in her district and states a number of incidents in which Curry made the West Precinct difficult to work in. Curry moved the meetings for the Block Watch Association, for which the plaintiff is in charge, to a less convenient meeting place without giving her any reason for the change. Curry moved the offices of the plaintiff and another crime prevention officer at the West Precinct, and as a result the plaintiff had no telephone for a month.

In July of 1998, Curry allegedly asked the plaintiff to "sweet talk" Bernard Mays, who handles the funds for the Enterprise Community, into getting tables and chairs for the precinct. On a second occasion, the plaintiff says Curry suggested that she "sweet talk" Mays into sending

---

[1] The factual allegations the plaintiff states in her complaint are taken as true for the purposes of the motions to dismiss. Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990).

2

her to a conference. Both times, the plaintiff refused.

On July 14, 1998, Curry called the plaintiff into his office and told her that she was a "powerful person," which could work for her or against her. He told her, "if you are not a team player, it could be bad." The plaintiff believed that Curry was referring to a media investigation of his attendance at the "Good Old Boys Roundup." The plaintiff suspected that Curry blamed her for alerting Channel 13 News of his attendance at the "Roundup."

About a week after the "be a team player" discussion, Curry questioned the plaintiff about her work hours and accused her of coming to work two hours late on a regular basis. Curry did not question the other crime prevention officer, a male, who is often out of the office, about his work hours.

In August, 1998, Curry told the plaintiff that someone reported alcohol on her breath after lunch but did not tell the plaintiff who made the accusation. The plaintiff was also told by Lt. Lindsey Thompson that Curry would require the crime prevention officers to complete daily activity sheets, unlike crime prevention officers in other precincts. The plaintiff was also told by Lt. Davis that Curry wanted the plaintiff to remove her crime prevention literature from the storage room, and was not given any reason for the move.

On September 9, 1998, the plaintiff met with Captain Eugene Moseby and Deputy Chief of Police Robert Walker. She told them about her problems with Curry and about a "pin-up" picture of a partially-nude female in Sergeant Mike Ashworth's office. Sometime later, when Police Chief Mike Coppage visited the precinct, the picture was removed. The plaintiff never received a response from Deputy Chief Walker regarding her complaints about Curry.

In mid-September, Abraham Boyd, a local businessman, told the plaintiff that Curry had

3

urged Boyd to accept a personal check from Sergeant Glass. Sgt. Glass complained to Curry about the incident with Boyd and accused Boyd of not accepting the check because he was a friend of the plaintiff. The plaintiff found this embarrassing because it was Boyd's policy not to accept personal checks from anyone.

On September 25, 1998, the plaintiff wrote Curry a letter outlining incidents of harassment and asked him to refrain from treating her offensively in the future. In November, she received a letter from Ann Thompson Smith, Senior Personnel Officer for the City of Birmingham. Ms. Smith discussed the plaintiff's complaints against Curry and stated that Smith would meet with Chief Coppage to discuss the plaintiff's concerns. Shortly thereafter, the plaintiff received a second letter from Ms. Smith advising her that Curry had received counseling. The plaintiff alleges that after she complained about Curry's actions, her office was burglarized.

In December 1998, the plaintiff notified Chief Coppage that a box of badges was missing from her office. She was later informed by Lt. Thompson that Curry gave Officer Young a key to her office in order to gather badges to distribute during a parade. Thompson asked the plaintiff to advise Chief Coppage that the incident was not a burglary, but the plaintiff did not do so.

In January 1999, Lt. Irene Williams, a black female, was transferred to the West Precinct. Williams allegedly told the plaintiff, "this work environment is so hostile, I don't know how you can take it." The plaintiff believed that Williams was placed at the West Precinct to act as a mediator between the plaintiff and Curry.

Curry also changed the meeting place of the plaintiff's March meeting of the Block Watch Association on short notice. Although the plaintiff tried to tell Curry that the new location would not accommodate the large number of attendees, Curry would not talk directly to her about it.

4

The plaintiff also alleges that Curry discriminates against African-American officers in general and that this discrimination has led to an environment hostile to black employees. According to the plaintiff, since Curry came to the West Precinct, white and black officers sit on opposite sides of the room during roll call. The plaintiff's complaint alleges several examples of black officers receiving different treatment from their white counterparts. For example, during roll call, a white sergeant asked a black officer to remove his sunglasses and then told him that he didn't like the way the officer was looking at him. A white male officer wrote a ticket for a black female sergeant for improper tint, although the male officer had a darker tint in his own pickup. On one occasion, a white male sergeant called a black male sergeant a "dumb son of a bitch." A black female officer, Sharon Davis, who had held a "desk" position at the precinct for two years was transferred to patrolling the streets after she gave a statement to Internal Affairs about the name-calling incident. Davis' desk position was then taken by a white male officer. The plaintiff has also alleged that Curry transferred white officers to a task force and an afternoon shift previously covered by black officers. Curry also apparently held meetings with two white male lieutenants and did not inform a black male lieutenant about the meetings.

The plaintiff filed a charge of discrimination with the EEOC and received a Notice of Right to Sue letter. The plaintiff filed this action on April 20, 1999, against the defendants[2] claiming violations of Title VII, § 1981, and § 1983. The plaintiff has voluntarily dismissed her Title VII claims against Coppage, Walker, Curry and Ashworth in their individual

---

[2] Plaintiff brought suit against Defendants Coppage, Walker, Curry and Ashworth in both their individual and official capacities; against Mayor Arrington solely in his official capacity; and against the City of Birmingham as a municipal corporation.

5

capacities.[3]

## Analysis

### I. Motions to Dismiss of Defendants Robert Walker, Mike Coppage and Mayor Richard Arrington, Jr.

Defendants Deputy Chief of Police Robert Walker, Police Chief Mike Coppage, and Mayor Richard Arrington, Jr. move to dismiss the plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants Walker and Coppage move alternatively for a more definite statement. For the following reasons, the motions to dismiss are due to be granted.

The § 1983 claims against the individual officers in their official capacities are due to be dismissed because the City of Birmingham has also been named as a defendant in this case. A suit against a municipal officer in his or her official capacity is effectively the same as a suit against the municipality itself. Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly." Id. Because the plaintiff has also brought a direct claim against the City of Birmingham, the claims against defendants Walker, Coppage and Arrington in their official capacities are due to be dismissed.

The plaintiff has also brought claims under § 1983 against defendants Walker and Coppage

---

[3] See Plaintiff's Response to Defendant Pat Curry's Motion to Dismiss, filed June 1, 1999.

in their individual capacities.[4] To sustain these claims, she must allege particular wrongful acts by the defendants with a "sufficient causal connection between the alleged... violation and the [defendants'] conduct." <u>Oladeinde v. Birmingham</u>, 963 F.2d 1481, 1486-87 (11th Cir. 1992). The plaintiff asserts that Walker and Coppage discriminated against her by failing to fully investigate her claim of harassment against Curry. However, this claim is unsupported by the facts alleged in the plaintiff's complaint. The plaintiff admits that she was contacted by a senior personnel officer regarding her complaints and was told that Curry had been counseled.[5] The plaintiff also met with Captain Moseby and Deputy Chief Walker and discussed her concerns. As a result of this meeting, Ashworth's pin-up picture was removed. Because the plaintiff has failed to allege particular wrongful acts by these defendants and does not show any connection between their actions and the alleged harassment by Curry, the plaintiff's § 1983 claims against defendants Walker and Coppage in their individual capacities are due to be dismissed.

The plaintiff's claims of racial discrimination under 42 U.S.C. § 1981 are also due to be dismissed. Section 1981 prohibits race discrimination in the making and enforcement of public and private contracts. <u>Ferrill v. The Parker Group</u>, 168 F.3d 468, 472 (11th Cir. 1999). The plaintiff's § 1981 claims against Walker, Coppage and Arrington are due to be dismissed because they were not parties to the employment contract between the plaintiff and her employer, the City of Birmingham.

The plaintiff's complaint also states Title VII claims against Walker, Coppage and

---

[4] Mayor Arrington is a party to this lawsuit solely in his official capacity.

[5] The plaintiff has not alleged any evidence that Curry did not receive counseling.

Arrington. However, these claims are due to be stricken because public officials are not 'employers' for the purpose of Title VII liability. <u>Clanton v. Orleans Parish School Bd.</u>, 649 F.2d 1084, 1099, n. 19 (5th Cir. 1981). Accordingly, the motions to dismiss of defendants Walker, Coppage and Arrington are due to be granted in full.

## II. <u>Motion to Dismiss of Defendant Mike Ashworth</u>

Defendant Mike Ashworth filed a Motion to Dismiss on May 19, 1999. On June 1, 1999, the plaintiff also filed a Motion to Dismiss this defendant. Defendant's unopposed motion to dismiss Mike Ashworth is accordingly due to be granted.

## III. <u>Motion to Dismiss of Defendant Pat Curry</u>

Defendant Pat Curry moves to dismiss the plaintiff's complaint pursuant to F.R.C.P. 12(b)(6) for failure to state a claim upon which relief can be granted. In her complaint, the plaintiff alleges that Curry discriminated against her by making inappropriate comments, which the plaintiff occasionally perceived as threatening. She also claims that statements and actions of other officers in the precinct under Curry's supervision created a racially hostile environment. Curry's motion to dismiss is due to be granted because the plaintiff has not alleged facts sufficient to support her claims of discrimination.

The plaintiff states Title VII, § 1983, and §1981 claims against Curry in both his official and individual capacities. The plaintiff's Title VII claim against Curry is due to be dismissed because Curry is not the plaintiff's "employer" and cannot be liable under Title VII. See 42 U.S.C. § 2000e(b); <u>Clanton</u>, 649 F.2d at 1099, n. 19. Under <u>Busby</u>, 931 F.2d at 776, both the

8

§ 1981 and § 1983 claims against the defendant in his official capacity are due to be dismissed because the City of Birmingham is also named as a defendant.

The plaintiff's claim of racial discrimination under § 1981 against Curry in his individual capacity is due to be dismissed because § 1981 protects the rights of persons "to make and enforce contracts." See Ferrill, 168 F.3d at 472. Curry is not a party to the plaintiff's employment contract with her employer, the City of Birmingham, and he did not have the power to "make or enforce" contracts with the plaintiff.

The plaintiff's § 1983 claim alleging racial discrimination against Curry in his individual capacity is also due to be dismissed at this time. The Eleventh Circuit has held that it "has required somewhat more specific pleading from section 1983 plaintiffs than from plaintiffs bringing other kinds of actions." Busby, 931 F.2d at 771 (citing Arnold v. Bd. of Educ. Of Escambia County, Ala., 880 F.2d 305, 309 (11th Cir. 1989)). The plaintiff's complaint alleges a number of specific incidents involving herself and the defendant. However, it is unclear which federal or constitutional rights the plaintiff alleges that the defendant has deprived her of. Her complaint does not meet the heightened pleading standards required in this Circuit. Therefore, the defendant's motion to dismiss is due to be granted, with leave granted to the plaintiff to refile her complaint within sixty days stating her § 1983 claim with greater specificity.

IV. Motion to Dismiss of Defendant City of Birmingham

Defendant City of Birmingham asks this court to dismiss the plaintiff's claims pursuant to F.R.C.P. 12(b)(6). This motion is due to be granted.

The plaintiff's claims under § 1983 and § 1981 are due to be dismissed because she fails

9

to allege facts sufficient to support a finding that the City had an official policy of failing to investigate harassment charges. A municipality can be liable under § 1983 or § 1981 for an injury inflicted by one of its employees only when those injuries were caused by "edicts or acts [which] may be fairly said to represent official policy." Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658, 694 (1978). In City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989), the Supreme Court held that a municipality's policy of inadequate police officer training may serve as a basis of liability only where the failure to train the officers amounts to deliberate indifference to individual constitutional rights. Here, to withstand a 12(b)(6) motion, the plaintiff must assert that the City has a custom and policy of failing to investigate charges of harassment brought by subordinate officers against superior officers amounting to a deliberate indifference to the rights of those subordinate officers in order to sustain her § 1983 and § 1981 claims against the City of Birmingham. Even under the liberal standard for a motion to dismiss, the plaintiff's complaint fails to allege any facts to support a claim that the City's alleged failure to investigate reflected a deliberate city policy as required by Monell and City of Canton.

The facts alleged by the plaintiff do not show that the City's policy and custom in responding to complaints of sexual harassment amounts to "deliberate indifference" to the plaintiff's right to be free from harassment. Indeed, the plaintiff's complaint suggests that the City did take steps to prevent the harassment from reoccurring after it was brought it to the attention of the supervising officials. Neither the plaintiff's § 1983 claim nor her § 1981 claim can withstand the defendant's motion to dismiss.

The plaintiff also alleges claims of disparate treatment, hostile work environment,[6] and retaliation under Title VII, but she has alleged no facts sufficient to survive a motion to dismiss. The plaintiff's complaint alleges a number of incidents where Curry has offended her. However, these incidents do not rise to the level of actionable discrimination by her employer because the facts she has alleged, if true, would not show that she has suffered an adverse employment action or was subjected to a hostile work environment.

The plaintiff alleges that Curry caused a number of inconveniences for her, such as moving her office and changing the location of the Block Watch meetings. She also alleges a number of comments made to her by Curry she took offense to; for example, being asked to "sweet talk" Bernard Mays into giving her program additional funding. The most serious accusations the plaintiff makes in her complaint are merely speculative: that Curry falsely accused her of drinking alcohol at lunch by telling her that an unnamed person smelled alcohol on her breath, and that after she complained to higher-level officers about Curry, her office was burglarized. She offers no proof, however, that Curry lied about the drinking report or that he was involved in the burglary. Curry's comment to her that she should "be a team player," even if seen in the threatening light the plaintiff says she took it in, does not appear to have been followed by any action against the plaintiff. The plaintiff's complaint does not allege that she was reprimanded, disciplined or demoted in any way due to Curry's conduct. She has not alleged an

---

[6] The plaintiff's complaint does not clearly state a hostile work environment claim against the defendants, however, a close reading of her complaint finds her alleging that she was "regularly subjected to a hostile working environment." See Plaintiff's Complaint, filed April 20, 1999, ¶ 81. Although inartfully buried in the complaint, the court will discuss this claim in the context of the City's motion to dismiss.

adverse employment action to sustain her disparate treatment or retaliation claims.

The plaintiff also makes general claims of racial tension at the precinct, which began after Curry's arrival. These incidents, in their totality, do not constitute a legally-cognizable hostile work environment.

Accordingly, the City's motion to dismiss is due to be granted at this time. The court grants the plaintiff leave to refile her Title VII claim within sixty days if she can allege facts sufficient to support a finding of an adverse employment action or a hostile work environment.

### Conclusion

For the foregoing reasons, the defendants' motions to dismiss are due to be granted. The plaintiff has leave to restate her complaint with greater specificity as to the § 1983 claim against defendant Curry and the Title VII claim against defendant city of Birmingham within sixty days.

Dated: *July 13*, 1999

                                                Chief Judge Sam C. Pointer, Jr.

Service List:

    Alicia K. Haynes
    Johann G. Moller
    Thomas Bentley, III
    James D. Love
    Gayle H. Gear