UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| A. ELAINE GREEN, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | CASE NO. CV 99-B-0988-S |
| } | |
| CITY OF BIRMINGHAM, et al., } | |
| } | **ENTERED** |
| Defendants. } | NOV 21 2000 |
| } | |

### MEMORANDUM OPINION

This case is before the court on defendant City of Birmingham's ("defendant" or "the City") Motion For Summary Judgment. Plaintiff A. Elaine Green ("plaintiff" or "Green") brought this action against defendant alleging gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended.[1]

Upon consideration of the parties' briefs, evidentiary submissions, oral argument, and the relevant law, the court is of the opinion that defendant's Motion is due to be granted.

### I. FACTS

Green is employed with the City as a Crime Prevention Officer ("CPO") assigned to the the Birmingham Police Department's West Precinct. (Defendant's Exhibit 1, Deposition of A. Elaine Green ("Green") at 12-13.) Green has been employed with the Birmingham Police Department ("BPD") since October 1976. (Green at 12-13.) According to Green, her job as a CPO requires her to "act as a liaison between the police officers and the community." (Green at

---

[1] At oral argument plaintiff's counsel conceded that plaintiff did not have a hostile environment claim.

13.) To facilitate the relationship between the police and the community, CPOs set up "Neighborhood Watch programs, go out and do talks at schools and the community groups and civic groups discussing how [citizens] can prevent themselves from being victimized." (Green at 13.) Green's direct supervisor is the precinct captain. (Green at 17.) Captain Pat Curry ("Curry") was assigned to the West Precinct in July 1998 by Chief W.M. Coppage ("Coppage"). (Defendant's Exhibit 2, Deposition of W. M. Coppage ("Coppage") at 20.)

On September 9, 1998, plaintiff presented Deputy Chief Robert Walker ("Walker") and Captain Eugene Mosby ("Mosby") with a memoranda ("Plaintiff's Memoranda") detailing incidents involving Curry and other supervisors, which plaintiff alleges were discriminatory based on her race and gender. (Green at 69, 72-73; Pl.'s Brief at 2.) Plaintiff stated in her deposition that the purpose of the memoranda was "[t]o let Deputy Chief Walker know that I was having a problem at West Precinct working for Captain Curry and with him." (Green at 72.)

Plaintiff testified that her first negative encounter with Curry was when he approached her and suggested that she knew who had reported his attendance at the "Good Ole Boys Roundup" to a television station that reported that Curry had attended the "Roundup" after his transfer to West Precinct. (Green at 24, 25.) From 1980 to 1995, Curry attended a gathering of law enforcement personnel known as the "Good Ole Boys Roundup." (Defendant's Exhibit 3, Deposition of Pat Curry ("Curry") at 15-29.) The "Roundup" was criticized as a gathering of racist law enforcement officers. (Curry at 22-24.) Plaintiff testified that she did not inform the media of his attendance, but that everyone already knew Curry had attended the "Roundup" because Curry's attendance had been in the news prior to Curry's coming to the West Precinct. (Green at 25.)

Plaintiff recounted several other instances, which she asserts were based on illegal discrimination and retaliation under Title VII. Plaintiff testified that on the 11th and 14th of July 1998 Curry asked her to "sweet talk" Bernard Mays ("Mays"). (Green at 43, 90; Pl.'s Brief at 2.) Mays supervised a federal grant program connected with the Police Department. (Green at 43.) Plaintiff testified that Curry twice suggested she "sweet talk" Mays, once to use federal grant money to pay for her attendance at the International Crime Prevention Practicioners Conference. (Green at 43, 66.) Plaintiff states that to her the phrase "sweet talk" means "[l]ike go throw yourself to some man." (Green at 63.) Although Curry used the phrase "sweet talk," plaintiff testified in her deposition that he did not suggest that she had or should have a sexual relationship with Mays. (Green at 65, 66.)

Plaintiff also asserts that because she was a black female, she was assigned to an upstairs office that did not have a phone. (Green at 76.) Green was the only person in the West Precinct who did not have a phone in her office. (Plaintiff's Exhibit 5, Deposition of Ann Smith ("Smith") at 34.) A phone was installed in plaintiff's office a little over a month after she was assigned to the office. (Green at 88.) During that month, Alvin Hicks ("Hicks"), a less senior CPO, had a phone. (Defendant's Exhibit 16, deposition of Ken Glass ("Glass") at 13.) Coppage testified that he, too, suffered delayed service from the City's telecommunications department. (Coppage at 37, 38.)

Plaintiff also believes that she was discriminated against or retaliated against because Curry questioned and refused to sign her overtime sheets for payroll purposes. (Green at 95-97.) Plaintiff felt that it was discriminatory for Curry to question her hours. (Green at 97.) Hicks testified that Curry questioned him regarding his time as well. (Affidavit of Alvin Lamar Hicks

3

("Hicks Aff.") at 3.) Curry required the CPOs to make daily reports of their activities, and both Green and Hicks thought this was an extra burden. (Hicks Aff. at 3, Green at 98-99.) Hicks did not find the reports harassing, but felt that the reports were "something the supervisors had a right to require." (Hicks Aff. at 3.) However, plaintiff's overtime pay was delayed only once. (Green at 96.) It was delayed one pay period and the overtime pay was included in plaintiff's next paycheck. (Green at 96.)

Plaintiff asserts that Curry's conduct hampered her ability to do her job. (Pl.'s Brief at 17.) Plaintiff testified that after she made complaints about Curry, he would not speak with her directly and dealt with her through sergeants and lieutenants until he was transferred from West Precinct. (Green at 153.) Plaintiff also testified that because she could not speak directly to Curry she was unable to perform her work in a timely fashion. (Green at 154.) Additionally, plaintiff complained to a Senior Personnel Officer that Curry discriminated against her by checking her breath for alcohol. (Smith at 41.)

On December 3, 1998, three months after delivering her memoranda to Walker and Mosby, plaintiff filed a charge of discrimination with the EEOC. (Green at 150, 161.) Plaintiff's EEOC charge states that the harassment of which she complains began on September 5, 1998. (Defendant's Exhibit 14, EEOC Charge Number 130990582 ("EEOC Charge").) Plaintiff alleged in her EEOC Charge that "[she is] being harassed and intimidated by [her] immediate supervisor, who refuses to talk to [her]. . . . [She] believes that [she is] being subjected to adverse conditions of employment and discrimination because of [her] sex, female, race, Black and in retaliation for opposing practices made unlawful under Title VII . . . ." (EEOC Charge.)

4

Ann Smith ("Smith"), Senior Personnel Officer, conducted an investigation into Green's complaints. (Smith at 19.) Smith investigated plaintiff's complaint that Curry questioned plaintiff regarding the presence of the smell of alcohol on her breath while on duty. (Smith at 41-42.) Curry admitted to Smith that he stopped communicating with plaintiff after she filed her complaint. (Smith at 66.) On or about November 15, 1998, Smith presented her findings and recommendations to Coppage. (Smith 91-92; Plaintiff's Exhibit 8, November 15, 1998 Memo from Smith to Coppage ("Smith memo November 15, 1998") at 2-4.) Smith testified that plaintiff's complaint of discrimination was sustained by the Personnel Department and the corrective action taken was sexual harassment retraining of Curry, and all supervisors at West Precinct, counseling of Curry regarding his choice of the words "sweet talk," and the subsequent transfer of Curry. (Smith at 102-103.)

Since filing her complaint against Curry, plaintiff has had no disciplinary action taken against her, lost no pay, benefits, or suffered a change in duties, privileges, or title as a result of these actions. (Green at 188-190.) Additionally, her most recent performance evaluation was favorable, (Green at 202), and Curry has been transferred to another precinct, (Smith at 103).

## II. DISCUSSION

A.  **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th

Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgement, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**B.    Gender Discrimination Claim**

Defendant moves for summary judgment on plaintiff's gender discrimination claim on the grounds that plaintiff failed to produce evidence establishing disparate treatment for purposes of Title VII. (City of Birmingham's Brief in Support of Summary Judgment ("Def.'s Brief") at 14.) Plaintiff brings this action pursuant to 42 U.S.C. § 2000e-16(a), which provides in relevant part:

> All personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-16(a) (emphasis added). (Complaint ¶ 1.)

Plaintiff bears the initial burden of establishing a prima facie case of discrimination. *See Texas Dept. Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). If the defendant succeeds in carrying this burden, then any "presumption of discrimination created by the *McDonnel Douglas* framework drops from the case, and the factual inquiry proceeds to a new level of specificity." *Combs v. Plantation Planters,* 106 F.3d 1519, 1528 (11th Cir. 1997) (quotation omitted). The plaintiff must then prove that the defendant's articulated reasons are a mere pretext for unlawful motives (i.e., discrimination or retaliation). *Burdine*, 450 U.S. at 253. A plaintiff's prima facie case coupled with sufficient evidence to allow a fact finder to disbelieve the employer's proffered explanation for its actions is enough to preclude entry of judgment as a matter of law. *See Combs*, 106 F.3d at 1529; *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997). At all times, the plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). To establish a prima facie case of gender discrimination, a plaintiff may employ direct, statistical, or circumstantial evidence. *Verbracken v. Westinghouse Elec. Corp,* 881 F.2d 1041, 1045 (11th Cir. 1989).

In Title VII actions, the Eleventh Circuit has held that an employee claiming discrimination must "demonstrate that a reasonable person in his position would view the employment action in question as adverse." *Doe v. Dekalb Co. Sch. Dist.*, 145 F. 3d 1441, 1449 (11th Cir. 1998). The mere fact that an employee dislikes his or her employer's action is not

7

sufficient to establish the element of adverse employment action required in employment discrimination cases. *Id.* Although alleged adverse actions need not cause "severe trauma" to support a discrimination claim, action that imposes "some *de minimis* inconvenience or alteration of responsibilities" is not enough. *Dekalb Co. Sch. Dist.*, 145 F. 3d at 1453.

In this case plaintiff must rely on circumstantial evidence to support her claim. To establish a prima facie case of discrimination plaintiff must show (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) the defendant treated similarly situated male employees more favorably; and (4) she was qualified to do the job. *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir. 1999). Although a plaintiff's burden in proving a prima facie case is light, summary judgment is appropriate if plaintiff fails to satisfy one of the elements of a prima facie case. *Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1432 (11th Cir. 1998) (an ADEA case). Defendant does not dispute that plaintiff is a member of a protected class (female). (Def.'s Brief at 14.) However, viewing the evidence in the light most favorable to the plaintiff, she has failed to establish a prima facie case of discrimination.

In this case, plaintiff alleges the following discriminatory conduct: (1) she was twice asked by Curry to "sweet talk" Mays into allowing plaintiff to use federal grant money at the precinct, (Green at 66, 90); (2) Curry singled out plaintiff to ask her about her use of alcohol while on duty, (Smith at 41-42); (3) Curry would not speak directly to plaintiff, but communicated with plaintiff through sergeants and lieutenants, (Green at 154); (4) plaintiff was assigned an office without a phone, while Hicks, a CPO with less seniority, had an office with a phone, (Green at 76; Glass at 10-16; Smith at 34); and (5) on one occasion plaintiff received her overtime pay late, (Green at 96).

The third requirement of the prima facie case, adverse employment action, requires plaintiff to show some adverse action with regard to terms, conditions, or privileges of employment. *See Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir. 2000) (An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.") (citations omitted). Plaintiff has failed to adduce any evidence that she was subjected to an adverse employment action. Plaintiff did not suffer an adverse employment action when she was moved to an upstairs office with no phone for one month. Sergeant Glass stated that he tried to have a phone installed in plaintiff's office, but each time he made the request he was told that the City would not connect a phone in the office because the "precinct was scheduled to get a new phone system at a later date and, therefore, the connections would not be made." (Glass at 10-16.) Coppage also testified that it took over a month for a phone line for his computer to be put in his office. (Coppage at 37.) Norris Murphee ("Murphee"), an employee responsible for installation and maintenance of the City's internal telephone systems, stated that a request to install a phone at the West Precinct on the second floor for a CPO office was received in April 1998. (Norris Murphee Affidavit ("Murphee Aff.") at 2.) Murphee stated that the request was delayed because funding to replace the West Precinct telephone system with a new system had been sought, but when funds were not provided to replace the system, telephones to expand the existing system were ordered. (Murphee Aff. at 2.) Thus, an unusually long delay resulted. (Murphee Aff. at 2.) A new phone was connected in the office in July of 1998. (Murphee Aff. at 2.) The request for a new phone had been made before the CPOs were

9

moved upstairs. Plaintiff was able to use the phone everyday at the precinct and stated that except for the inconveinence of not having a phone in her office, the fact that she did not have a phone in her office resulted in her missing only a few calls. (Green at 88.) Hicks' office was also moved upstairs. (Hicks Aff. at 4.) Hicks stated that plaintiff was free to use his office phone at all times. (Hicks Aff. at 4.)

Plaintiff also alleged that she was discriminated against because on one occasion she received her overtime pay late. (Green at 95-96.) This incident is insufficient either alone or in combination with plaintiff's other allegations to constitute an adverse employment action. *See e.g. Wilson-Simmons v. Lake County Sheriff's Dept.,* 982 F. Supp. 496, 502 (N.D. Ohio 1997) ("Although [plaintiff] suffered a slight delay in receiving her overtime pay . . . this incident did not rise to the level of an adverse employment action. Plaintiff's overtime sheet was lost, but she did not receive a reduction in pay nor was she deprived of pay earned.); *Sharp v. Continental Express Airlines, Inc.,* No. Civ.A. 98-3818, 2000 WL 190244, at 7 (E.D.Pa. Feb. 7, 2000) (short delays in receiving pay do not rise to the level of an adverse employment action).

Plaintiff contends that Curry's action regarding her overtime pay is discriminatory conduct. In this case, plaintiff did not receive her overtime pay until her next paycheck because Curry requested that plaintiff submit daily activity reports before he would sign off on plaintiff's overtime. (Green at 95-96.) The delay does not rise to the level of an adverse employment action. Hicks testified that Curry also questioned him regarding his time schedule and required him to complete daily reports of his activities. (Hicks Aff. at 3.) Hicks stated that he "felt that [Curry] had both a right and an obligation to make such inquiries because he was my supervisor and the commander of the precinct." (Hicks Aff. at 3.) This incident is insufficient either alone

or in combination with plaintiff's other allegations to constitute an adverse employment action.

Plaintiff also alleges that Curry singled her out when he confronted plaintiff to determine whether she had consumed alcohol while on duty. (Pl.'s Brief at 16.) During her investigation into plaintiff's complaints, Smith asked Curry whether he had questioned plaintiff about the use of alcohol during her lunch break. (Smith at 41.) Curry stated that someone had reported to him that plaintiff had alcohol on her breath. (Smith 41-42.) Curry told Smith that because he did not smell alcohol on plaintiff's breath and did not notice a change in her behavior, he did not take any further action. (Smith at 42.) Plaintiff failed to show that similarly situated males were treated differently. Curry's questioning plaintiff after a report that she had alcohol on her breath does not constitute an adverse employment action.

Finally, plaintiff alleges that Curry's refusal to communicate directly with her rises to the level of an adverse employment action. (Pl.'s Brief at 17.) To avoid controversy with plaintiff after she had made her complaints, Curry dealt with plaintiff only through sergeants and lieutenants until he was transferred from West Precinct. (Green at 153.) Green complains that this hampered her ability to do her job in a timely manner because she had to talk to the sergeants and lieutenants to get answers instead of talking directly to Curry. (Pl.'s Brief at 17; Green at 153.) The evidence demonstrates that plaintiff could communicate directly to Curry through memoranda. (Exhibit 17, Memo from Green to Curry dated February 2, 1999.) Fellow CPO Hicks testified that he dealt with Curry both directly and indirectly through Curry's subordinate lieutenants. (Hicks Aff. at 2.) Communicating with Curry through his subordinates did not alter plaintiff's employment and is therefore not an adverse employment action.

Since filing her complaint against Curry, plaintiff has had no disciplinary action taken against her, lost no pay, benefits, or suffered a change in duties, privileges, or title as a result of these actions. (Green at 188-190.) Additionally, her most recent performance evaluation was favorable. (Green at 202.) *See Dekalb County Sch. Dist.*, 145 F. 3d at 1449-50 (An employment action is not adverse solely because an employee dislikes it or disagrees with the action. In this case an allegedly retaliatory transfer failed to rise to the level of an adverse employment action because it did not entail a change in position, title, salary, or any other aspect of employment. The court stated that conduct must be serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges.). Because plaintiff has not set forth sufficient evidence to establish a prima facie case of sex discrimination under Title VII, defendant is entitled to judgment as a matter of law on plaintiff's gender discrimination claim.

C.   **Retaliation Claim**

In order to prove a *prima facie* case of retaliation, plaintiff must establish that "(1) she engaged in protected activity; (2) her employer was aware of that activity; (3) she suffered adverse employment action; and (4) there was a causal link between her protected activity and the adverse employment action." *Maniccia v. Brown*, 171 F. 3d 1364, 1369 (11th Cir. 1999). In the context of Title VII retaliation claims, the Eleventh Circuit has held that Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of an ultimate employment decision. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998). Nevertheless, some "threshold level of substantiality . . . must be met" for unlawful

discrimination to be cognizable under the anti-retaliation clause. *Wideman*, 141 F. 3d at 1456;[2] *cf. Doe v. DeKalb County School District*, 145 F. 3d 1441, 1453 (11th Cir. 1998) ("Any adversity must be material.").

Plaintiff cannot satisfy the prerequisite of an "adverse employment action." She contends that the alleged retaliation consisted of (1) Curry's refusal to communicate directly with her after she filed a complaint, (Pl.'s Brief at 17); (2) Curry's questioning of plaintiff about the use of alcohol during her lunch break, (Smith at 41); (3) the delay in receipt of overtime pay due plaintiff by one pay period, (Green at 96).

In this case, the alleged adverse actions fail to meet the threshold level of substantiality. Curry's requirement that plaintiff communicate with him through subordinates or memoranda did not constitute a material alteration of plaintiff's employment. Hicks, another CPO, testified that he too dealt indirectly with Curry through Curry's subordinates. (Hicks Aff. at 2.) Curry continued this policy until he was transferred to another precinct. (Green at 153.) This action fails to meet the threshold level of substantiality. *See Dunbar v. The Bd. of Directors of the Leavenworth Public Library*, 996 F. Supp. 1086, 1092-93 (D. Kansas 1998) (plaintiff's claim that her supervisor refused to speak to her and ignored her did not amount to an adverse employment action in retaliation claim). Additionally, the brief delay plaintiff endured in receiving overtime pay does not amount to an adverse employment action. Moreover, plaintiff's overtime pay was delayed before she engaged in any protected activity. (*See* EEOC Charge

---

[2]In *Wideman*, the alleged adverse actions that satisfied the threshold level of "substantiality" included the employer or its agents requiring plaintiff to work on her day off, suspending her one day, threatening her with being shot in the head, and needlessly delaying authorization for medical treatment. 141 F.3d at 1455.

(dated December 3, 1998); Plaintiff's Memoranda (dated September 9, 1998); Green at 95.) Finally, Curry's mere questioning of plaintiff about alcohol use while on duty does not constitute an adverse employment action.

Plaintiff has failed to establish that she suffered an "adverse employment action." Therefore, she has failed to establish a *prima facie* case of retaliation and defendant is entitled to judgment as a matter of law on plaintiff's retaliation claim.

### III. CONCLUSION

Based on the foregoing, the court finds that defendant's Motion for Summary Judgment is due to be granted. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 21st day of November, 2000.

*[signature]*
**SHARON LOVELACE BLACKBURN**
United States District Judge